**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RICARDO SANDOVAL-CERRANTES,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

No. C 08-4070-MWB
(No. CR 05-4119-MWB)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

————————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. The Appeal And The Petition For Certiorari* . . . . . . . . . . . . . . . . . . 3
    *C. The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . . . 5
    *B. Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *1. Need for an evidentiary hearing* . . . . . . . . . . . . . . . . . . . . . 7
        *2. Procedural bar* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . 9
        *1. Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *2. Failure to argue "cultural assimilation"* . . . . . . . . . . . . . . . 11
        *a. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . 11
        *b. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *D. Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

This case is before the court on petitioner Ricardo Sandoval-Cerrantes's August 15, 2008, *Pro Se* First 28 U.S.C. § 2255 Motion To Vacate, Set Aside, and/or Correct Sentence And Conviction By An [sic] Federal Inmate (§ 2255 Motion) (Civ. docket no. 1). As his sole ground for § 2255 relief, Sandoval-Cerrantes asserts that his counsel was ineffective in failing to argue his "cultural assimilation" as a ground for a downward departure in his sentence for illegal reentry in violation of 18 U.S.C. § 1326(a). The respondent contends that Sandoval-Cerrantes is not entitled to relief on his § 2255 Motion.

## I.  INTRODUCTION

### A.  The Criminal Proceedings

In an Indictment (Crim. docket no. 1), handed down November 16, 2005, petitioner Ricardo Sandoval-Cerrantes was indicted on a charge that, on or about November 2, 2005, although he was an alien previously removed and deported on May 10, 2003, he was found, knowingly and unlawfully, in the United States after reentering the United States without first obtaining the consent to apply for readmission into the United States from either the United States Attorney General or the Secretary for Homeland Security, all in violation of 18 U.S.C. § 1326(a). The record in the criminal case, including the Presentence Investigation Report (PSIR) (Crim. docket no. 23), indicates that Sandoval-Cerrantes had actually reentered the United States on October 26, 2004. The Indictment charged, further, that Sandoval-Cerrantes had previously been convicted of various offenses permitting an increase in his maximum statutory sentence pursuant to 18 U.S.C. § 1326(b).

An Assistant Federal Defender appeared to represent Sandoval-Cerrantes at his arraignment and was subsequently appointed to represent him in the case. Sandoval-Cerrantes pleaded not guilty to the illegal reentry charge at his arraignment on November 23, 2005, but he subsequently pleaded guilty to that charge at a change-of-plea hearing before United States Magistrate Judge (now Chief United States Magistrate Judge) Paul A. Zoss on December 6, 2005. Judge Zoss filed a Report and Recommendation (Crim. docket no. 15) recommending that the court accept Sandoval-Cerrantes's plea, and by Order (Crim. docket no. 16) dated December 28, 2005, the court accepted the Report and Recommendation, thereby accepting Sandoval-Cerrantes's guilty plea.

At a sentencing hearing before the undersigned on January 31, 2006, the court found that Sandoval-Cerrantes's adjusted offense level was 21, that his criminal history category was VI, and that his advisory guidelines sentencing range was 77 to 96 months. The court sentenced Sandoval-Cerrantes to 96 months of imprisonment, the top of his advisory guidelines sentencing range, because of his "terrible criminal record." Sentencing Transcript (Crim. docket no. 26), 4:12-14. Judgment entered accordingly on February 3, 2006.

## B. The Appeal And The Petition For Certiorari

Sandoval-Cerrantes filed a *pro se* notice of appeal (Crim. docket no. 19) on February 3, 2006. The same Assistant Federal Defender who represented Sandoval-Cerrantes in the trial court was subsequently appointed to represent him on appeal. In a brief under *Anders v. California*, 386 U.S. 738 (1967), counsel argued that Sandoval-Cerrantes's sentence at the top of the advisory guidelines range was unreasonable, then moved to withdraw. *See United States v. Sandoval-Cerrantes*, 212 Fed.Appx. 584, 585 (8th Cir. 2007). Sandoval-Cerrantes filed a *pro se* motion for appointment of new counsel.

*Id.* On January 17, 2007, the Eighth Circuit Court of Appeals affirmed Sandoval-Cerrantes's sentence, finding that the sentencing court "specifically declined to impose a more lenient sentence because of Cerrantes's history and characteristics, namely, his troubling criminal history," and that "counsel has not succeeded in rebutting the presumption of reasonableness that attaches to a sentence imposed within the advisory Guidelines range." *Id.* The Eighth Circuit Court of Appeals also noted, "In his pro se motion Cerrantes appears to raise claims of an involuntary guilty plea and ineffective assistance of counsel, neither of which is properly before us in this direct criminal appeal." *Id.* at 586. The appellate court found "no other nonfrivolous issues," affirmed the trial court's judgment, granted counsel's motion to withdraw, and denied Sandoval-Cerrantes's *pro se* motion for appointment of new counsel. *Id.*

Sandoval-Cerrantes filed a *pro se* petition for writ of certiorari to the United States Supreme Court on April 18, 2007. The Supreme Court denied that petition on October 1, 2007. *Sandoval-Cerrantes v. United States*, 128 S. Ct. 138 (2007).

### C. The § 2255 Motion

On August 15, 2008, Sandoval-Cerrantes filed the *Pro Se* First 28 U.S.C. § 2255 Motion To Vacate, Set Aside, and/or Correct Sentence And Conviction By An [sic] Federal Inmate (§ 2255 Motion) (Civ. docket no. 1) now before the court. In his § 2255 Motion, Sandoval-Cerrantes argues that his attorney was ineffective when he failed to argue for a downward departure from his advisory guidelines sentencing range based on "cultural assimilation." By Order (Civ. docket no. 2), the court directed the respondent to file a response to Sandoval-Cerrantes's § 2255 Motion. The respondent filed such a Response (Civ. docket no. 6) on November 20, 2008, to which the respondent attached an affidavit of Sandoval-Cerrantes's counsel at sentencing and on appeal. Sandoval-Cerrantes

filed a *pro se* Reply (denominated a Traverse To The Government's Response On Motion To Vacate, § 2255) (Civ. docket no. 7) on December 23, 2008.

The court finds that Sandoval-Cerrantes's § 2255 Motion is now fully submitted.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Sandoval-Cerrantes's claim, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting

*Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67

F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*)

On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have

acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Sandoval-Cerrantes's claim for § 2255 relief.

## B. Preliminary Matters

### 1. Need for an evidentiary hearing

Sandoval-Cerrantes has not expressly requested an evidentiary hearing on his § 2255 Motion, but the court will nevertheless consider whether he is entitled to one. "A district court does not err in dismissing a movant's section 2255 motion without a hearing if

(1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *see* 28 U.S.C. §2255. In this case, the court concludes that no evidentiary hearing is required on any issue, because the record conclusively shows that Sandoval-Cerrantes's allegations either cannot be accepted as true, because they are contradicted by the record, or that, even if his allegations were accepted as true, they would not entitle him to relief.

### 2. *Procedural bar*

The respondent asserts that Sandoval-Cerrantes's sole claim for § 2255 relief is barred, because he argued on direct appeal that his sentence was unreasonable, but both the Eighth Circuit Court of Appeals and the Supreme Court affirmed his sentence. The respondent argues that Sandoval-Cerrantes cannot now simply couch the same claim as an "ineffective assistance of counsel" claim to mount a collateral attack. The Eighth Circuit Court of Appeals has expressly recognized, however, that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Moreover, the Eighth Circuit Court of Appeals expressly noted in this case that Sandoval-Cerrantes's claim of ineffective assistance of counsel was not properly before that court on direct appeal. *Sandoval-Cerrantes*, 212 Fed. Appx. at 586. Therefore, the court will consider Sandoval-Cerrantes's ineffective assistance claim on the merits.

## C. Ineffective Assistance Of Counsel

### 1.    Applicable Standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. AMEND. VI.  Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008).  By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States.  28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States.").  As noted above, in the discussion of procedural default, the Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record.  *See Hughes*, 330 F.3d at 1069 ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established:  post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'"  *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877

(8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)).

### 2. *Failure to argue "cultural assimilation"*

Sandoval-Cerrantes's sole claim for § 2255 relief is that his counsel provided ineffective assistance by failing to argue for a downward departure at sentencing based on his "cultural assimilation." The respondent denies that Sandoval-Cerrantes is entitled to relief on the merits of this claim.

### a. *Arguments of the parties*

Sandoval-Cerrantes argues that he was a "prime candidate" for a downward departure based on "cultural assimilation," because he reentered the United States after receiving a telephone call in Mexico from his wife in the United States, who had custody of their two children, informing him that she was going to die of liver cancer. He contends that he reentered the United States to prevent placement of his children in foster care, because there was no immediate kin available to take custody of them, if his wife died. He contends that, despite informing his attorney of this situation, his attorney refused to argue for a downward departure, because he asserted that there was no basis for such a downward departure. Sandoval-Cerrantes argues that his counsel was wrong,

because he could have argued for a downward departure based on "cultural assimilation." He argues that he fits squarely within the factors considered for such a departure, because he lived in the United States from the time he was seven years old; he lived in several states in this country and attended school in this country; even though he was deported to Mexico several times, he never lived there long; he has lots of family in the United States; his wife was living here with his children, and they were all naturalized citizens of this country; and he returned to the United States specifically because his wife was going to die of liver cancer and there was no one to take care of his children. He argues that he planned to be with his wife until she died, then take his children back to Mexico with him. He argues that his counsel's failure to argue for a departure based on "cultural assimilation" was not only unprofessional, but prejudicial, because he did not receive a downward departure.

The respondent argues that Sandoval-Cerrantes's counsel's was not only aware of the circumstances to which Sandoval-Cerrantes now points, but was also aware of Sandoval-Cerrantes's extensive criminal history, which made Sandoval-Cerrantes an unlikely candidate for a downward departure based on "cultural assimilation." The respondent points to counsel's affidavit, which indicates that counsel discussed and evaluated the possibility of a downward departure based on "cultural assimilation" with Sandoval-Cerrantes, advised him of his opinion that such a motion would not be successful, believed that Sandoval-Cerrantes understood his evaluation, and was never directed by Sandoval-Cerrantes to file such a motion or otherwise given any indication of disagreement or dissatisfaction with his advice and representation. Thus, the respondent argues that Sandoval-Cerrantes's current version of events is self-serving. The respondent also points out that Sandoval-Cerrantes did not object to the portion of the Presentence Investigation Report (PSIR) indicating that he returned to Sioux City to find employment,

so that the record indicates that his motive for reentering the United States was money, not family. The respondent argues that counsel not only did not act unprofessionally, but that Sandoval-Cerrantes cannot show that the likely outcome of any argument based on "cultural assimilation" would have been to Sandoval-Cerrantes's benefit, in light of his extensive criminal history.

In his reply, Sandoval-Cerrantes asserts that his counsel never talked to him about a downward departure based on "cultural assimilation." He argues that only the court can say what would have happened, if counsel had presented such a motion. He also submits his wife's death certificate, indicating that she died on March 18, 2006, less than two months after he was sentenced on the charge of illegally reentering the United States.

### b.    Analysis

The Eighth Circuit Court of Appeals has never expressly recognized a downward departure based on "cultural assimilation," although it has suggested that it is not an abuse of discretion for a sentencing court to deny such a departure, if requested, if the sentencing court is aware of its authority to grant a downward departure when sentencing a defendant for illegal reentry. *See, e.g., United States v. Cazares-Gonzales*, 182 Fed.Appx. 603, 604-05 (8th Cir. 2006); *United States v. Perales-Avila*, 82 Fed.Appx. 498 (8th Cir. 2003); *United States v. Murillo*, 26 Fed.Appx. 593 (8th Cir. 2001); *United States v. Wilson-Garcia*, 61 Fed.Appx. 319 (8th Cir. 2003); *but see United States v. Aguilar-Portillo*, 334 F.3d 744, 749-50 (8th Cir. 2003) ("A downward departure for 'cultural assimilation' could simply have no role in sentences for drug crimes. . . ."). The Eighth Circuit Court of Appeals has also indicated that it understands a downward departure based on "cultural assimilation" to be based on the formulation of such a ground in *United States v. Lipman*, 133 F.3d 726 (9th Cir. 1998). *See, e.g., Aguilar-Portillo*, 334 F.3d at 749-50; *United States v. Murillo*, 26 Fed.Appx. 593, 594 (8th Cir. 2001).

In *Lipman*, the Ninth Circuit Court of Appeals concluded, first, that a departure based on "cultural assimilation" is neither addressed nor proscribed in the Sentencing Guidelines, so that a sentencing court has authority to consider evidence of "cultural assimilation" under U.S.S.G. § 5K2.0. *Lipman*, 133 F.3d at 730. The court also noted that such a consideration was "akin to the factor of 'family and community ties' discussed under U.S.S.G. § 5H1.6," which led that court to conclude that, "to the extent that cultural assimilation denotes family and community ties, . . . the district court has the authority to depart on this basis in extraordinary circumstances." *Id.* The court distinguished "cultural assimilation" from "threat of future deportation," and the pertinent factors for determining whether to depart on the basis of "cultural assimilation," as follows:

> [C]ultural assimilation is distinguishable from the threat of future deportation because a defendant's cultural assimilation may speak to his offense and to his character. Recognizing cultural assimilation as a factor that may justify departure therefore would not result in the arbitrary dividing line between all aliens and all citizens that we rejected in *[United States v.] Alvarez-Cardenas*, [902 F.2d 734 (9th Cir. 1990)]. For example, cultural assimilation may be relevant to sentencing under U.S.S.G. § 2L1.2 if a district court finds that a defendant's unusual cultural ties to the United States—rather than ordinary economic incentives—provided the motivation for the defendant's illegal reentry or continued presence in the United States. Cultural assimilation may also be relevant to the character of a defendant sentenced under U.S.S.G. § 2L1.2 insofar as his culpability might be lessened if his motives were familial or cultural rather than economic. Thus, unlike the general threat of deportation, cultural assimilation is a fact-specific ground for departure that may speak to an individual defendant's offense, his conduct and his character,

and not just to possible future events unrelated to the
defendant's individual circumstances.

*Lipman*, 133 F.3d at 731. Even before Sandoval-Cerrantes's sentencing, the Ninth Circuit
Court of Appeals had recognized that a defendant's extensive criminal history is a factor
to be weighed with his "cultural assimilation" to determine whether a reduced sentence is
appropriate. *See, e.g., United States v. Hernandez-Garcia*, 97 Fed.Appx. 119, 123 (9th
Cir. 2004) (rejecting the prosecution's argument that the defendant's multiple deportations
and criminal record rendered him *per se* ineligible for a "cultural assimilation" departure,
but concluding that they are factors to be considered by the court); *United States v.
Campos-Lara*, 81 Fed.Appx. 223 (9th Cir. 2003) (the district court concluded, as a factual
matter, that a "cultural assimilation" departure was unwarranted in light of other facts
particular to the case, including the defendant's criminal history, so the appellate court was
without jurisdiction to review the lower court's failure to depart).

As to Sandoval-Cerrantes's claim of ineffective assistance of counsel for failing to
assert "cultural assimilation" as a ground for a downward departure, the court cannot find
that counsel performed so deficiently that he was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment. *Rice*, 449 F.3d at 897 (first prong of
the ineffective assistance analysis is deficient performance). Counsel avers in his affidavit
that, in discussions with Sandoval-Cerrantes, "we evaluated and considered the possibility
of a 'cultural assimilation' departure," that he "fully advised Mr. Sandoval-Cerrantes of
the issues surrounding such a departure and [his] legal opinion that such a motion would
not be successful based upon the grounds discussed," and that "Mr. Sandoval-Cerrantes
indicated that he understood." Response (Civ. docket no. 6), counsel's affidavit, ¶ 13.
Counsel also represents that Sandoval-Cerrantes did not "specifically direct that a motion
for downward departure based upon cultural assimilation be made." *Id.* at ¶ 14.

Sandoval-Cerrantes's self-serving assertion in his Reply that counsel never discussed a downward departure based on "cultural assimilation" at all is simply less credible. Moreover, it was clear from the PSIR, to which no pertinent objections were made, that Sandoval-Cerrantes had an extensive criminal record, including some violent offenses, so that counsel reasonably concluded that it would be unlikely that consideration of other personal circumstances, such as the purported reason for his most recent reentry, would outweigh that criminal history. *See Lipman*, 133 F.3d at 731 (cultural assimilation is relevant to the defendant's character and circumstances); *Hernandez-Garcia*, 97 Fed.Appx. at 123 (the defendant's multiple deportations and criminal record were factors to be considered by the court as relevant to whether to depart on the basis of "cultural assimilation"); *United States v. Campos-Lara*, 81 Fed.Appx. 223 (same).

Moreover, Sandoval-Cerrantes cannot show "prejudice" from any alleged deficient performance of counsel. *Ledezma-Rodriguez*, 423 F.3d at 836 (second prong of analysis of an ineffective assistance claim); *Davis*, 423 F.3d at 877. Again, to satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). There is no such reasonable probability here, for several reasons. First, the PSIR reflects that Sandoval-Cerrantes gave as the reason for his latest illegal reentry into the United States in October 2004 that "he was unable to get a job in Mexico because of his tattoos and age," not concern about the welfare of his children in light of his wife's (actually, ex-wife's) illness. PSIR, ¶ 68. It also reflects that, after getting his ex-wife and children out of a homeless shelter, Sandoval-Cerrantes moved to South Dakota, then Sioux City, Iowa, to find employment, which is inconsistent

with his assertions that his primary concern was to get his children back to Mexico in light of his wife's illness and imminent death. *Id.* at ¶ 69. Thus, the record suggests that economic incentives, not family or cultural ties, were the reasons for his illegal reentry. *See Lipman*, 133 F.3d at 731. Second, at sentencing, Sandoval-Cerrantes asserted in his allocution that he came back to California because his wife was dying of liver problems, Sentencing Transcript (Crim. docket no. 26), 3:20-24, so that the court was aware of the circumstances that Sandoval-Cerrantes asserts would have provided the primary basis for a downward departure for "cultural assimilation." Finally, the Sentencing Transcript shows that the court considered all of Sandoval-Cerrantes's circumstances, including his personal circumstances relating to his wife's illness and his criminal history, and concluded that a sentence at the top end of his advisory guidelines range was warranted. *See id.* at 4:12-18.[1] Under these circumstances, it is exceedingly unlikely that, even had counsel moved for a downward departure based on "cultural assimilation" that the court would have given Sandoval-Cerrantes any different sentence.[2] Therefore, Sandoval-Cerrantes cannot show the "prejudice" necessary to sustain his ineffective assistance of counsel claim.

---

[1]The court stated the following as its preface to imposition of sentence:

> I'd like to be more lenient with you than I'm going to be, Mr. Sandoval-Cerrantes, but you have a terrible criminal record. And I'm sympathetic to the fact that it was so difficult for you when you went back to Mexico, and I would be much more lenient with you if it weren't for the fact that you've committed so many crimes when you've been in the United States, but you have.

Sentencing Transcript, 4:12-18.

[2]Indeed, this court has been presented with arguments for sentence reductions based on "cultural assimilation" a number of times, but has never granted one.

Sandoval-Cerrantes is not entitled to relief on this claim.

### D. Certificate Of Appealability

Denial of Sandoval-Cerrantes's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein. The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> \* \* \*
>
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Sandoval-Cerrantes has not made a substantial showing of the denial of a constitutional right on his § 2255 claim. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Sandoval-Cerrantes's claim to be debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Sandoval-Cerrantes does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

## III. CONCLUSION

Upon the foregoing, petitioner Ricardo Sandoval-Cerrantes's August 15, 2008, *Pro Se* First 28 U.S.C. § 2255 Motion To Vacate, Set Aside, and/or Correct Sentence And Conviction By An [sic] Federal Inmate (§ 2255 Motion) (Civ. docket no. 1) is **denied in its entirety**. This matter is **dismissed in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 10th day of November, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

19